Argued and submitted April 22, affirmed on appeal and cross-appeal August 10, reconsideration denied November 10, petition for review denied December 20, 1988
(307 Or 446)

# TIDES ASSOCIATION OF UNIT OWNERS et al,
## *Respondents - Cross-Appellants,*

*v.*

# CITY COUNCIL OF
# CITY OF SEASIDE, OREGON et al,
## *Appellants - Cross-Respondents.*

## (CC-84-868; CA A44066)

759 P2d 292

Jeffrey M. Batchelor, Portland, argued the cause for appellants - cross-respondents. With him on the briefs were Dan Van Thiel, Astoria, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

John C. Pinkstaff, Portland, argued the cause for respondents - cross-appellants. With him on the brief were Stephen F. Crew and O'Donnell, Ramis, Elliott & Crew, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs brought this action to enjoin the construction by defendants (city) of restroom facilities[1] on an undeveloped beach area in the City of Seaside. Plaintiffs are property owners affected by the construction. The area is located west of the Promenade (Prom) in a portion of a dedicated plat known as Cartwright Park. After a hearing in 1984, the trial court denied plaintiffs' motion for a preliminary injunction but expressly warned city that further construction would be at its risk. In October, 1986, after a trial on the merits, the trial court issued a peremptory writ of mandamus and a judgment requiring city to remove the facilities that had been built after the hearing on the motion for a preliminary injunction. We affirm.

In 1921, the Seaside City Council passed Ordinance No. 867,[2] which provides, in part:

"Section 1. All lands lying westward from that part of the City of Seaside dedicated and known as Hermosa Park, Mountain View Addition and Cartwright Park and extending westward to the Pacific ocean at the line of ordinary low water mark be and the same are hereby declared to be reserved from use by the erection of all private structures whatsoever, or the erection or placing thereon of any booth, shop, tent, store, or building or structure of any kind or of any wagon, machine, motor, or apparatus of any kind; and said land is hereby reserved from vehicular traffic or use of any kind; and it is hereby declared to be unlawful to erect or place thereon any of the structures, buildings, booths, shops, tents, machines, motor, or apparatus aforesaid or to operate thereon or thereover any bicycle, motorcycle or any motor driven or horse-drawn vehicle * * *."

Apparently unaware of Ordinance No. 867, the Council passed Ordinance Nos. 83-10 and 83-28 in 1983. No. 83-10 is a zoning ordinance. It states, in part:

"Those uses allowed in the basic zoning district within

---

[1] The facilities include a restroom, picnic tables, concrete garbage containers, barbeques and a parking lot. Plaintiffs have treated the facilities as a unit and did not request removal of the picnic amenities or parking spaces separately from the restroom.

[2] We take judicial notice of the ordinances, OEC 201, one of which was put in evidence insofar as the record on appeal shows.

which the property is located will be allowed in the ADI zone if the use will not violate [certain] standards * * *. However, no use involving the placement or construction of a building will be allowed unless the building is a public access facility, such as a restroom."

No. 83-28 annexed to the city the property on which the restroom facilities were built. It reads, in part:

"6) [The council finds t]hat it is necessary to annex to said Urban Renewal Area, the remaining length and width of the Prom—including adjacent City-owned property, segments of public streets and alleys which provide access to the Prom and an area of public beach running parallel to said Prom—so that physical rehabilitation, sidewalk widening, public restroom construction or reconstruction can be accomplished in a comprehensive and fiscally responsible manner[.]"

■ The trial court held that Ordinance No. 867 is still valid and that it forbids the construction of the facilities. City challenges that conclusion.[3] It first argues that the duty of a court is to construe legislation to provide a harmonious whole. *Davis v. Wasco, IED,* 286 Or 261, 593 P2d 1152 (1979). In order to resolve the apparent conflict between Ordinance No. 867, which would preclude building the facilities, and Ordinance Nos. 83-10 and 83-28, which would allow them, the city argues that No. 867 ought not be read literally. Rather, it contends that the language should be construed to effectuate the intention of the Council which passed the ordinance. It argues that the Council's intention was not to forbid restrooms, but to prohibit vehicular traffic on the beach. City argues that the intention behind the ordinance is shown by the statement in the preamble:

"It is deemed desirable to protect the public from the danger of vehicular traffic of all kinds on said lands and to straighten and relocate all heretofore existing ways, walks and highways * * *."

City contends that Ordinance No. 867 is only concerned with

---

[3] City argues that plaintiffs do not have a private claim against it, because Ordinance No. 867 provides that violation of the ordinance is punishable by fine or imprisonment. We agree with plaintiffs that city did not raise the issue of plaintiffs' private rights or "standing" before the trial court. At trial, city's argument was limited to its position that the ordinance was penal and therefore without bearing on the restroom facilities. We therefore do not consider the "standing" issue on appeal.

vehicular traffic on the beach and that public restroom facilities do not create that danger. Therefore, if the ordinance is construed to give meaning to the intent to forbid traffic, it becomes consistent with the more recent enactments.

City's reading of a limited purpose of the ordinance · ignores the plain language of the enactment. Although a preamble may indicate the intention of an enactment, it cannot overcome the clear meaning of the language used. *See Sunshine Dairy v. Peterson et al,* 183 Or 305, 193 P2d 543 (1948). The ordinance straightforwardly prohibits all buildings and structures on the beach. That prohibition operates separately from the restriction of vehicular traffic. The ordinance was not intended to effectuate only one goal. It was intended to preserve the ocean front as well as to restrict traffic. Although that goal is not stated in the preamble, it is reflected in the title, which the council adopted:

> "AN ORDINANCE TO PROVIDE FOR THE PRESER-VATION AND CONTROL OF LANDS COMPRISING THE PACIFIC OCEAN FRONT LINE WESTWARD FROM THAT PART OF THE CITY OF SEASIDE KNOWN AS * * * CARTWRIGHT PARK; TO ESTAB-LISH THE WAY DESIGNATED AS THE PROMENADE; TO RELOCATE AND STRAIGHTEN THE STREET, WAY, AND WALK HERETOFORE USED WESTWARD FROM SAID LAND; TO REGULATE THE USE OF ALL OF SAID LAND AND SAID PROMENADE; AND TO PROVIDE PUNISHMENT FOR THE VIOLATION OF THE PROVISIONS OF THE ORDINANCE."

City next argues that, if the ordinance does prohibit the construction of the facilities, it was impliedly repealed by the later enactments. Repeal by implication is effected only if the two enactments cannot be harmonized. *Ulrich v. Lincoln Realty Co. et al,* 180 Or 380, 168 P2d 582, 175 P2d 149 (1947). If two laws are totally irreconcilable, the later enactment will prevail; if they can function together, a claim that the earlier is superseded depends on persuasive evidence that the legislature intended the new enactment to prevail. *Harris v. Craig,* 299 Or 12, 15 n 1, 697 P2d 189 (1985).

The trial court found no conflict between Ordinance No. 867 and the later enactments. It concluded that section 11-010 of the city's Zoning Ordinance resolved the conflict, because that section provides:

"Where the conditions imposed by any provision of this ordinance are less restrictive than comparable conditions imposed by any other provisions of this ordinance or any other ordinance, resolution, or regulation, the provisions which are more restrictive shall govern."

The trial court was correct that section 11-010 resolves the conflict between Ordinances No. 867 and Zoning Ordinance No. 83-10 and that the more restrictive No. 867 prevails. However, section 11-010 only resolves conflicts within the zoning ordinances or between a zoning ordinance and another ordinance. City does not dispute that section 11-010 cannot resolve a conflict between Ordinance Nos. 867 and 86-28, neither of which is a zoning ordinance.

However, there is no conflict between Ordinances No. 867 and No. 83-28 which needs to be resolved. Ordinance No. 83-28 adopted "the third amendment to the Urban Renewal Plan for the Trails End Urban Renewal Area in the City of Seaside," the effect of which was to annex the property to the city. In enacting the annexation, the council adopted findings of fact. One of those findings is the provision, quoted *supra,* stating the need to construct or reconstruct public restrooms.[4] That finding is merely a recital of a reason for the legislation and does not provide authority for construction of restrooms or any other affirmative action by the city. Accordingly, it cannot be considered to have repealed the express prohibition of buildings in Ordinance No. 867.[5] *See City of*

---

[4] Other findings of fact made by the council in passing Ordinance No. 83-28 include:

"1) That the Promenade, hereinafter referred to as 'Prom,' located within the city of Seaside is an historic public facility;

"2) That the Prom and certain of its appurtenant elements have deteriorated to the degree that replacement, repair, widening and other physical rehabilitation work is now required;

"3) That the Prom, as an attraction to tourists, is a vital link in the city's economy;

"4) That the Prom is an important recreation element used extensively by the citizens of the city[.]"

[5] On cross-appeal, plaintiffs argue that the trial court erred in holding that the construction of the facilities did not violate the plat restrictions which dedicate the area to public park use. It is generally held that a public authority may place structures on a public park which are incidental to its use as a park. *See Vale v. San Bernadino,* 109 Cal App 102, 292 P 689 (1930). On *de novo* review, we agree with the trial court that plaintiffs failed to sustain their burden to show that a public restroom facility is not an approved public use within the dedication.

*Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988).

Affirmed on appeal and on cross-appeal.